FILED
JUN 0 2 2017
[signature] CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| DAVID MOGARD,<br><br>Plaintiff,<br><br>- vs -<br><br>CITY OF MILBANK, BOYD VAN VOOREN, in his individual capacity, and JASON KETTWIG, in his individual capacity.<br><br>Defendants. | CIV. 17-cv- 1014<br><br><br>COMPLAINT |

## INTRODUCTION

1. In this civil action Plaintiff prays for a judgment against Defendants for damages, attorney fees and costs, because Defendants, acting under color of state law, deprived the Plaintiff of his rights secured to him by the Constitution of the United States abd the law of South Dakota. Specifically, Plaintiff seeks a Judgment declaring that Plaintiff was deprived of his liberty and property interests when Defendants terminated Plaintiff without due process of law, which directly violated the City of Milbank Employee Policy Manual. The relevant portions of the Policy Manual are attached as Ex. A. Plaintiff further seeks a Judgment declaring that Plaintiff was retaliated against for exercising his First Amendment right by Defendants when he was terminated for speaking to officials about a matter of public concern. Finally, Plaintiff seeks a judgment that Plaintiff was wrongfully terminated under state law.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented in Counts I-III of this Complaint by virtue of 28 U.S.C.A

§1331 and 28 U.S.C.A § 1343(3) because Counts I-III are based upon 42 U.S.C.A. § 1983. This court also has subject matter jurisdiction of Count II of this Complaint pursuant to 28 U.S.C.A. § 1343(4).

3. This Court has supplemental jurisdiction of Count IV. 28 U.S.C.A. § 1338(a).

4. Jurisdiction for the request for attorney's fees and costs is conferred by 42 U.S.C. §1988.

5. No other action, civil or criminal, is pending in any state court involving the Plaintiff regarding the activities and events at issue here.

6. This suit is authorized by law to redress deprivations under color of state law of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution.

7. Venue in this Court is appropriate as the various acts complained of occurred, and the Defendants are located, within the Northern Division of the District of South Dakota, and more specifically within the County of Grant, South Dakota.

**PARTIES**

8. Plaintiff David Mogard ("Mogard") is a resident of the City of Milbank, Grant County, South Dakota.

9. Defendant City of Milbank is a municipal corporation organized pursuant to the laws of the State of South Dakota. Milbank is in Grant County and in the Northern Division of the Federal District of South Dakota.

10. Defendant Chief of Police Boyd Van Vooren ("Defendant Van Vooren") serves as the current Chief of Police for the City of Milbank. Defendant Van Vooren served as Chief of Police during the events described within this Complaint.

11. Defendant City Administrator Jason Kettwig ("Defendant Kettwig") serves as the City Administrator for the City of Milbank. Defendant Kettwig served as City Administrator during the events described within this Complaint.

12. Defendant City of Milbank, Defendant Van Vooren, and Defendant Kettwig will be collectively referred to as "Defendants."

## FACTS

13. David Mogard was employed as a police officer in the Milbank Police Department beginning September 6, 2008.

14. David Mogard was a certified police officer who met the standards of ARSD 2:01:02:01.

15. David Mogard received satisfactory evaluations as a police officer during the seven years and eight months he was employed by the City of Milbank (the "City").

16. David Mogard expressed his concerns about the unequal scheduling of police officers, improperly functioning seat belts, and bald, unsafe tires on police squad cars. These expressions on matters of public concern were not publicized, but were expressed to Defendant Police Chief Boyd Van Vooren, Defendant Kettwig, Assistant Chief Corey Hooth, and City Council members Steve Weiner and James Johnson. Mr. Mogard further was mistakenly blamed for making comments to Milbank high school students, when in fact those comments were made by another officer. Mr. Mogard was given no opportunity to correct this misinformation.

17. On or about May 25, 2016, David Mogard was terminated as a City employee by a motion and vote of the City Council. He was subsequently handed a letter dated May 25, 2016, by the Defendant Chief of Police Van Vooren. No reasons for the termination were given. See

the attached Ex. B, May 25, 2016 letter signed by Defendant Police Chief VanVooren. Mr. Mogard was not given any notice of proposed disciplinary action.

18. David Mogard was given no opportunity to respond to any allegations and no opportunity to state any response to the discipline. This is a violation of the rule set forth in *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532 (1985) which requires some sort of pre-termination hearing.

19. The City has adopted a civil service system as defined and governed by SDCL 9-14-14, through its City of Milbank Employee Policy Manual ("Policy Manual") dated April 1, 2016, Ex. A.

20. Section § 9.6 of the Policy Manual states:

**Disciplinary Interview**

Before any disciplinary action of suspension without pay, demotion, or dismissal, the City Administrator shall:

1. Notify the employee of the proposed disciplinary action, providing the reason(s) for the action and the proposed discipline, and the employee shall be permitted a reasonable opportunity to respond to the allegations and proposed discipline; and

2. The City shall then after provide written notice to the employee of the discipline. An employee may appeal the discipline through the grievance procedure where the policy is applicable.

21. The Policy Manual §9.6(3) also states: "If requested, a disciplinary review shall be held to give the employee an opportunity to present reasons, orally or in writing, why the action should not be taken."

22. Additionally, the Policy Manual §8.3.1 states: "In cases of discharge, the employee will be granted full due process rights."

4

23. After Mr. Mogard received his termination letter, he filed a written grievance with City Administrator Kettwig regarding his discharge from employment, pursuant to Policy Manual §10.3, which states, "an employee who is not in the employee-training period may file a written grievance with the City Administrator regarding a term or condition of employment."

24. A May 27, 2016 meeting was scheduled between Mr. Mogard and Mr. Kettwig. At the meeting, the only reason given by Mr. Kettwig to Mr. Mogard for the discharge was that Kettig was informed that he was terminated because he voiced concerns to the public, even though Mr. Kettwig admitted that Mr. Mogard had been a good officer and was performing his job effectively. Other comments made during this meeting include:

   a. Mr. Kettwig said the taypayers do not need to know what is going on in the police department;

   b. Mr. Kettwig said that to complain to high school kids and to others in the community is not the way to help build the police department the right way;

   c. Mr. Kettwig said the high school kids are the people telling Ketwig why other officers are leaving the department, and that Mr. Mogard said that;

   d. Mr. Mogard said that the allegation of Mr. Mogard talking to high school kids was another officer talking to them and not Mr. Mogard; and

   e. Mr. Kettwig admitted that Mr. Mogard spoke to him directly about the schedule and bald tires and nothing was done, they spoke about broken seat belts in police cars.

25. David Mogard appealed the denial of his grievance to the City Council pursuant to Policy Manual §10.4.

26. David Mogard was granted a meeting with the City Council on June 11, 2016. He presented written reasons why he should not have been terminated.

27. The City Council did not render a decision regarding Mr. Mogard's grievance, contrary to Policy Manual §10.4. Mr. Mogard remained discharged.

28. The Defendants do not have qualified immunity under 42 U.S.C. § 1983. Defendants violated clearly established statutory and constitutional rights of which a reasonable person would have known, at the time of Mr. Mogard's discharge. The unlawfulness of Defendant's official acts was apparent in view of existing law.

29. Prior to David Mogard's termination, he earned $20.44/hour as a Milbank police officer. Additionally, Mr. Mogard received the following benefits:

   a. South Dakota retirement;
   b. Health and vision insurance, which was paid 100% by the City of Milbank. After Plaintiff's termination, he obtained insurance through his wife's family insurance plan through her employer at a cost of $100.00 per month;
   c. Personal time off of sixteen (16) hours per year;
   d. Holiday paid time off of nine (9) paid holidays per year;
   e. Overtime pay for working holidays;
   f. Life insurance policy of $10,000 paid by the City of Milbank;
   g. $100.00 per year equipment and clothing allowance;
   h. $200.00 per year Unity Square membership; and
   i. Milbank school annual activity ticket, worth $200.00.

30. Additionally, after termination Mr. Mogard had to quit two part time jobs that he had been able to sustain during his schedule as a police officer. Mr. Mogard drove school bus during the school year, earning approximately $7,000.00 a year. Mr. Mogard also taught at the Police Academy in Pierre, which earned him approximately $13,000.00 per year. Mr. Mogard was forced to quit these two part time jobs to take a full time Monday through Friday job, due to his termination. Thus, due to Office Mogard's termination, he was unable to earn $20,000.00 in additional earnings.

## COUNT I:
## DEPRIVATION OF PROPERTY
## RIGHTS WITHOUT DUE PROCESS OF LAW

31. Paragraphs 1-30 are re-alleged as though set out in full.

32. The requirements of procedural due process applies to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972). When protected interests are implicated, the right to a prior hearing is paramount. The United States Supreme Court has made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.

33. The Policy Manual §8.3.1 explicitly states: "In cases of discharge, the employee will be granted full due process rights."

34. The Policy Manual and the City policy of granting full due process rights to an employee in cases of dismissal were violated in several ways. Mr. Mogard received no notice of any proposed disciplinary action. No reasons for the proposed disciplinary action and proposed discipline were provided by Defendants. Mr. Mogard was not provided any opportunity, much less a reasonable opportunity, to respond to any allegations and "proposed discipline" by Defendants. The City Council did not render a final decision to Mr. Mogard regarding his grievance. Finally, Mr. Mogard was not provided with an opportunity for a grievance hearing by an impartial board because the very board (the council) that was charged with hearing the grievance had unilaterally voted to terminate him.

35. When a governmental entity adopts a set of regulations, it has the force and effect of law. *Schaub v. Chamberlain Bd. of Educ.*, 339 N.W.2d 307, 310 (SD 1983); *Schnabel v. Alcester Sch. Dist. No.61-1*, 295 N.W.2d 340 (SD 1980). The Defendants violated this

longstanding rule and violated the requirement of SDCL 9-14-14 by changing the operation of its own civil service rules to affect the standing of Mr. Mogard.

36. Subsequent discussions with the City Administrator were no substitute: "The City shall <u>then</u> after provide written notice to the employee of the discipline." Policy manual § 9-6 (2) (emphasis added). The clear meaning of this is to give the employee a chance to state his side, *before* the discipline is imposed.

37. To exacerbate matters even further, the initial termination decision was made by the City Council, and then transmitted to Mr. Mogard. This is the same body which was scheduled to hear, and is mandated to hear, the Step 2 grievance:

> i. If not satisfied with the City Administrator's response, the employee may appeal the decision to the governing board. The appeal must be filed with the next level within 5 working days of notice of the decisions upon which the appeal is based. If not satisfied with the governing board's decision, then the requirements of SDCL 3-18-15.2 shall be followed.

Policy Manual, § 10.4: Step 2 is plainly called an "appeal."

38. Mr. Mogard was deprived of his protected property interest in his continued public employment without due process of law as the Defendants, acting under color of state law, failed to follow the Policy Manual.

39. As a proximate result of Defendants' conduct of depriving Mr. Mogard of his property interest in his continued employment without due process of law, Mr. Mogard has been damaged by the loss of past and future income, lost employment benefits, and has suffered anxiety and emotional distress.

...

## COUNT II:
## DENIAL OF LIBERTY INTEREST
## WITHOUT DUE PROCESS OF LAW

40. Paragraphs 1-39 are re-alleged as though set out in full.

41. The violations described in the paragraphs above not only contravened the City policy, but also deprived Mr. Mogard of his liberty interest without due process of law guaranteed by the 14th Amendment to the United States Constitution. A government employee's liberty interest is implicated when he is dismissed amid charges that impose on him a stigma and other disability that foreclose his freedom to take advantage of other employment opportunities or that might seriously damage his standing and associations in his community. Charges implying "dishonesty, or immorality" stigmatize any employee because they call into question his good name, reputation, honor, or integrity. In such a case, the employee must be provided with a name-clearing hearing.

42. Mr. Mogard's liberty interests were infringed without due process of law. The due process denial results from the failure of the Defendants to follow its own policies; this denial was enhanced by the hearing with a council which had already demonstrated its partiality by voting to terminate Mr. Mogard. He was not provided a name-clearing hearing to respond to any allegations and "proposed discipline."

43. Mr. Mogard was given no opportunity to clear his name when he was wrongfully scorned for making comments to Milbank high school students, when in fact those comments were made by another officer.

44. As a direct and proximate result of the Mr. Mogard's deprivation of liberty without due process of law, Mr. Mogard has been the subject of damaging rumors and innuendo in his community, which damaged his reputation and impeded his ability to find new

employment. His persistent efforts to find new employment have been impeded by the damage to his reputation caused by Defendants' actions.

45. The damage to Mr. Mogard's reputation has caused him embarrassment, anxiety and emotional distress in addition to the interference with David Mogard's ability to find suitable replacement employment.

## COUNT III:
## RETALIATION FOR EXERCISE
## OF FIRST AMENDMENT RIGHTS

46. Paragraphs 1-45 are re-alleged as though set out in full.

47. A public employee may not be discharged, disciplined, or punished for exercising the right to free speech. A plaintiff making a First Amendment retaliation claim must establish four elements: 1) that he has suffered an adverse employment decision; 2) that his speech involved a matter of public concern; 3) that his interest in commenting on matters of public concern outweigh the defendant's interest in promoting efficiency; and 4) that the speech motivated the defendant's action. Whether speech involves a matter of public concern is "determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

48. David Mogard suffered an adverse employment decision when he was terminated for speaking to Defendants and officials about a matter of public concern, namely the safety of police squad vehicles. Mr. Mogard's interest in commenting on the safety of police squad cars outweighed the defendants' interest in promoting efficiency. The Defendants' decision to terminate Mr. Mogard was motivated by Mogard's speech. Defendants' conduct is a direct violation of Mr. Mogard's First Amendment right of free speech.

49. Mr. Mogard's speech did not, in any way, infringe upon the efficiency of the public services the City performs through its employees.

50. Statements regarding the wastefulness and inefficiency in managing and operating government entities are matters of public concern, especially at a police department. Mr Mogard's speech did not create disharmony in the workplace, did not impede Mogard's ability to perform his duties, and did not impair his working relationships with other employees.

51. The comment by Mr. Rettwig described in paragraph 24(a), above, shows that Defendants adopted a policy completely stifling any speech about the police department, which is illegal, and that Mr. Mogard's termination was motivated by that policy.

52. As a direct and proximate result of the Defendants' retaliation against Mr. Mogard for his exercise of his free speech rights, Mr. Mogard has been deprived of past income, future income, and lost benefits, and has been subjected to anxiety and emotional distress.

## COUNT IV:
## WRONGFUL TERMINATION UNDER STATE LAW

53. Paragraphs 1-52 are re-alleged as though set out in full.

54. The governing body hearing the grievance must be impartial. *Riter v. Woonsocket*, 504 N.W.2d 572 (1993). Instead, in this case, the decision of the City Council was arbitrary, capricious, and an abuse of discretion, and was rendered by a board which was not impartial.

55. South Dakota law, SDCL 9-14-14, mandates that any municipality which adopts a civil service process for its employees, including a due process hearing before a duly constituted civil service board, which in this case was the Milbank City Council, may not modify that process to affect the standing of any employee.

56. The Milbank City Council modified its process of reviewing Mr. Mogard's termination by voting in favor of terminating Mr. Mogard prior to the initiation of the grievance process, where that City Council was to be the *final* level of municipal review in that process.

57. The failure of the Defendants to allow Mr. Mogard to have an impartial board review his grievance prior to termination and the Defendants' violation of SDCL 9-14-14 are independently sufficient reasons for concluding that Mr. Mogard's discharge from employment was a wrongful termination under South Dakota law. Furthermore, retaliating against Mr. Mogard for his exercise of protected speech and depriving him of due process of law, violates SD Const. Art. VI, §§ 2 and 5.

58. Mr. Mogard was terminated in violation of SDCL 60-11-17.1 which prohibits the discharge of an employee, or any reprisal against him, for making any complaint to an employer because the employee has made any complaint.

59. As a direct and proximate result of the Defendants' wrongful discharge of David Mogard, has been damaged by the loss of past and future income, the loss of benefits, and was subjected to anxiety and emotional distress.

## DAMAGES AGAINST DEFENDANTS

60. The U.S. Supreme Court has recognized that compensation under a § 1983 claim is available when such actions are found to have been a violation of Constitutional rights and to have caused compensable injury. If an employee is deprived of his constitutional rights under color of state action, the offender is liable for any consequential damages. 42 U.S.C. §1983. Mr. Mogard has been deprived of his property and liberty interests without due process of law, has been retaliated against for exercising his right to free speech, and was terminated in violation of

South Dakota law, all which have caused him damages of lost past and future income, lost benefits, embarrassment, anxiety and emotional distress.

61. The U.S. Supreme Court has also recognized punitive damages under a § 1983 claim are available against municipal officials when an official is sued in his or her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 21-22 (1991). "[I]t is enough to show that the official, acting under a color of state law, causes the deprivation of a federal right." *Id.* at 25. Defendant Van Vooren and Defendant Kettwig are personally liable for damages caused to Mr. Mogard for their actions. Defendant Van Vooren and Defendant Kettwig are "persons" within the meaning of § 1983. Defendant Van Vooren and Defendant Ketwig, officials for the City of Milbank, acting under color of state law, caused the deprivation of Mr. Mogard's federal rights by wrongfully terminating Mr. Mogard without due process in violation of the Policy Manual and retaliating against Mr. Mogard for exercising his First Amendment Rights.

62. Because the conduct described in the Complaint is violative of the United States Constitution, Mr. Mogard is also entitled, as prevailing party, to an award of costs and attorney fees incurred herein pursuant to 42 U.S.C. §1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment against Defendants, to include:

1. Defendants wrongfully deprived Plaintiff of his constitutional rights guaranteed by the First and Fourteenth amendments to the United States Constitution, pursuant to 42 U.S.C. §1983, and the Defendants wrongfully terminated Plaintiff's employment under South Dakota law, and that Plaintiff was irreparably damaged as a result of Defendants' conduct, and that Plaintiff shall be entitled to recovered damages in an amount to be proven at trial;

2. That Plaintiff recover from Defendants his costs and disbursements herein, including attorneys' fees, costs, and interest thereon pursuant to 42 U.S.C. §1988; and

3. Entry of such other and further relief as the Court deems just and proper.

Dated this 2d day of June, 2017 at Sioux Falls, South Dakota.

HAGEN, WILKA & ARCHER, LLP

By *Thomas K. Wilka*
Thomas K. Wilka
600 S. Main Avenue, Suite 102
P.O. Box 964
Sioux Falls, SD 57101-0964
Attorneys for Plaintiff

PLAINTIFF DEMANDS A TRIAL BY JURY